# United States Court of Appeals

### for the

# Seventh Circuit

Case No. 25-2587

IN RE: ABBOTT LABORATORIES, ET AL.
PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION

ERICKA MAR, as administratrix of the ESTATE OF RAILEE MAR,

*Plaintiff-Appellant,*

— v. —

ABBOTT LABORATORIES,

*Defendant-Appellee.*

ON APPEAL FROM AN ORDER ENTERED IN THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION IN CASE NOS. 1:22-CV-00232 AND 1:22-CV-00071

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

JOSE ROJAS
LEVIN, ROJAS CAMASSAR & RECK
40 Russ Street
Hartford, Connecticut 06106
(860) 535-4040
jose@lrcr.law

*Counsel for Plaintiff-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (625039)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................. ii

INTRODUCTION ........................................................................1

ARGUMENT.............................................................................2

   I.    THE DISTRICT COURT MISAPPLIED RULE 56 IN
       RESOLVING WARNING CAUSATION ........................................2

   II.   ABBOTT'S "EVERYBODY KNOWS" AND
       INEVITABILITY ARGUMENTS FAIL .........................................10

   III.  ABBOTT'S ALTERNATIVE AFFIRMANCE/
       CAUSATION ARGUMENTS ARE IMPROPER ..........................14

CONCLUSION .........................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)................................................................3

*Cloutier v. GoJet Airlines, LLC,*
   996 F.3d 426 (7th Cir. 2021)................................................3

*General Elec. Co. v. Joiner,*
   522 U.S. 136 (1997)..............................................................16

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999)..............................................................16

**Statutes and Other Authorities:**

Fed. R. Civ. P. 56...............................................................1, 2, 4, 18, 19

**INTRODUCTION**

This appeal presents a narrow Rule 56 question: whether a reasonable jury could find that an adequate warning—one conveying the magnitude and urgency of the risk associated with Abbott's product—could have mattered.[1]

The district court resolved warning causation by treating the counterfactual nature of the inquiry as dispositive. Specifically, the court concluded that the inherent uncertainty in determining how decision-makers would have responded to different risk information was too great to permit a jury verdict. R.96. Mem. Op. & Order Granting Summ. J. 14–17 (May 2, 2025). In doing so, the court did not identify a legally impermissible inference; it weighed competing inferences and rejected those favoring Plaintiff. That approach conflicts with Rule 56's requirement that reasonable inferences be drawn in the nonmovant's favor.

---

[1] To be clear, Plaintiff does <u>not</u> challenge the district court's ruling on design defect. This appeal concerns only the granting of summary judgment on Plaintiff's failure-to-warn claim.

Abbott's response diverts attention from the narrow issue on appeal by devoting substantial argument to background scientific and clinical matters bearing on medical causation—such as epidemiology, dose, and general neonatal decision-making—rather than the actual Rule 56 inquiry presented. That reframing bypasses the Rule 56 inquiry by recasting the appeal as one about medical causation, even though the district court itself declined to decide causation as a matter of law. Where, as here, a reasonable jury could conclude that an adequate warning conveying the magnitude and urgency of the risk would have altered the timing, urgency, or course of feeding decisions, summary judgment cannot stand.

**ARGUMENT**

## I.    THE DISTRICT COURT MISAPPLIED RULE 56 IN RESOLVING WARNING CAUSATION

The district court granted summary judgment not because Plaintiff failed to present evidence, but because it concluded that the counterfactual inquiry inherent in warning causation was too uncertain to submit to a jury. Treating that uncertainty as dispositive conflicts with Rule 56, which requires that reasonable inferences be drawn in the nonmovant's favor.

"Determining what inferences from factual evidence are appropriate is a task quintessentially entrusted to the jury." *Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 441 (7th Cir. 2021). As the Seventh Circuit emphasized there, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and at summary judgment "all justifiable inferences are to be drawn in [the nonmovant's] favor." *Cloutier*, 996 F.3d at 441 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The causation theory in *Cloutier* required the jury to infer how multiple third parties would have responded in a hypothetical regulatory setting—an inferential chain at least as attenuated as the one Abbott labels "speculative" here. Yet the Seventh Circuit reversed summary judgment, rejecting the argument that uncertainty about how others might have acted rendered the claim legally insufficient, and reaffirming that counterfactual inference is "part and parcel of the jury's core function." *Cloutier*, 996 F.3d at 441. Abbott's attempt to distinguish *Cloutier* thus ignores its central holding: that courts may not convert uncertainty inherent in counterfactual

3

causation into a basis for summary judgment by resolving competing inferences against the nonmovant.

Counterfactual proof is inherently uncertain. That uncertainty does not disqualify the claim; it is precisely why the jury's common sense and experience are required. The ruling below, and Abbott's reasoning, effectively assume that it would be unreasonable for a jury to infer that a physician, once informed of the magnitude and urgency of a serious risk, would take steps to address that danger. Treating that inference as impermissible requires the court to discount ordinary medical judgment and common sense, and to resolve competing inferences that Rule 56 reserves for the jury. At summary judgment, the question is not whether a court finds Plaintiff's counterfactual theory persuasive, but whether a jury would be unreasonable to credit it. Labeling an inference "speculative" does not identify an impermissible inference; it reflects disagreement with how competing inferences should be weighed. Resolving that disagreement is the jury's role, not the court's.

The summary-judgment record supports the inference that an adequate warning would have altered RaiLee's feeding course. RaiLee was clinically stable and doing well while fed exclusively human milk, with no signs of necrotizing enterocolitis ("NEC"), and her condition deteriorated only after Abbott's cow's-milk-based formula was introduced. R.52-2, Maxwell Tr. 180:1–186:25; R.52-31, DeZure (12/13/2024) Tr. 211:1–14. RaiLee's treating neonatologist testified that if Abbott had warned that Similac Special Care increased the risk of NEC, "we would have tried, yes, to get donor milk maybe quicker than we did," and that such knowledge could have allowed him to "fast-forward" bureaucratic efforts to secure donor milk. R.52-2, Maxwell Tr. 119:16–120:15. Ms. Mar testified that she had additional expressed breast milk available but was instructed by NICU staff to discard it, and that a friend in the NICU contemporaneously offered to donate her own breast milk to feed RaiLee, which the hospital refused. R.52-30, E. Mar Tr. 39:10–42:25.

From this evidence, a jury could reasonably infer that had Abbott disclosed the known risk of NEC associated with its formula, physicians

and parents would have pursued available human-milk alternatives—by preserving Ms. Mar's milk, accelerating donor-milk efforts, delaying or suspending formula use, or avoiding formula altogether—thereby preventing RaiLee's exposure to the product that immediately preceded her fatal illness. A reasonable jury could conclude that an adequate warning conveying the magnitude and urgency of the NEC risk would have altered the timing, urgency, or prioritization of feeding decisions. This is more than theory. Dr. Maxwell acknowledged that feeding decisions for similarly situated infants *later* reflected different risk assessments, explaining that "we might have waited until the baby was 34 weeks" before introducing formula—"that's what we do now", showing a development of practice in response to evolution of knowledge. R.52-2, Maxwell Tr. 215:11–21.

Abbott's reliance on selective excerpts of Dr. Maxwell's testimony does not resolve causation as a matter of law; it creates a genuine factual dispute. To the extent Abbott points to tension within Dr. Maxwell's testimony, that tension underscores—rather than eliminates—the existence

of disputed material facts and the impropriety of resolving competing

inferences at summary judgment. Abbott emphasizes Dr. Maxwell's

acknowledgment that he knew in general terms that formula feeding is

associated with higher rates of NEC (Appellee Br. at 22), but this is the

same witness testified that had Abbott warned that its preterm formula

increased the risk of NEC, he would have attempted to obtain donor milk

sooner and could have used that information to "fast-forward" the

hospital's bureaucratic process, R.52-2, Maxwell Tr. 119:21–120:15. Ms. Mar

further testified that she had additional expressed breast milk that NICU

staff instructed her to discard and that a friend contemporaneously offered

to donate breast milk for RaiLee, which the hospital declined, R.52-30, E.

Mar Tr. 39:10–42:25. Taken together, this evidence permits a reasonable

jury to find that although clinicians were generally aware that human milk

is preferable, the absence of a manufacturer warning deprived them of risk-

specific information that would have altered the urgency and course of

decision-making—by preserving available human milk, accelerating

donor-milk efforts, or avoiding formula altogether—and that Abbott's

insistence on resolving that uncertainty against Plaintiff improperly invades the jury's role.

Abbott's causation argument rests on a false binary. It treats the inquiry as turning solely on whether formula was ultimately administered, as if warning causation required proof of a single, decisive fork in the road. That is not the law. The relevant question is not limited to a black-and-white choice between formula and breast milk, but whether an adequate warning could have altered the *timing, urgency, sequencing, or escalation* of feeding decisions—even if formula was later used. A jury could reasonably infer, for example, that stronger risk information would have prompted delayed introduction, heightened monitoring, temporary suspension of feeding at early signs of distress, earlier pursuit of alternatives, or faster escalation once complications emerged. Warning causation does not operate through a single, linear decision point; it often operates through a series of incremental judgments that, taken together, materially alter outcomes. Requiring proof that the ultimate outcome would have been categorically different improperly collapses warning causation into an all-

or-nothing test and strips juries of their role in evaluating how information influences real-world decision-making.

Abbott further argues that Plaintiff's warning-causation theory fails because it is limited to the precise warning language proposed by Dr. Scheer. *See*, Appellee Br. 26. That framing misstates both the record and the law. Plaintiff is not required at summary judgment to prove causation based on a single, verbatim warning formulation. The relevant inquiry is whether an adequate warning—one that reasonably conveyed the magnitude and urgency of the NEC risk associated with Abbott's product—could have altered decision-making. Dr. Scheer's proposed warning was offered as evidence of the type of information an adequate warning could have conveyed, not as a rigid prerequisite to liability. Treating his wording as dispositive improperly narrows the inquiry and invites the Court to resolve factual questions about how different warnings might have influenced conduct—questions reserved for the jury.

## II.    ABBOTT'S "EVERYBODY KNOWS" AND INEVITABILITY ARGUMENTS FAIL.

Abbott's reliance on what "everybody knows" about NEC risk

misstates the function of warnings. Warning law does not ask whether a

risk appears in medical literature or is generally known in the abstract; it

asks whether the manufacturer provided information sufficient to convey

the magnitude, severity, and urgency of the risk so that decision-makers

could appropriately prioritize and respond to it. General awareness that

formula-fed infants face some increased NEC risk is not equivalent to

knowledge that a manufacturer's product poses a serious and potentially

fatal danger requiring immediate mitigation and warning.

Consistent with that misframing, Abbott devotes a substantial

portion of its response brief to the assertion that clinicians already

understood the risk of necrotizing enterocolitis associated with formula

feeding, rendering any additional warning unnecessary. *See* Appellee Br. 6-

9. Closely related, Abbott argues that formula feeding was inevitable in this

case, and therefore that a warning could not have altered the

outcome. *Id.* at 24–26. Abbott advances these propositions as dispositive,

10

but that framing misstates the summary-judgment inquiry. At this stage, general clinical awareness and assertions of inevitability do not, standing alone, justify resolving warning causation as a matter of law where a reasonable jury could infer that an adequate warning—one conveying the magnitude and urgency of the product-specific risk—would have influenced the timing, urgency, or course of decision-making. By urging the Court to treat those factual premises as conclusive, Abbott improperly converts competing inferences into legal insufficiency.

Applied to the record, Abbott's framing collapses. Plaintiff presented evidence from which a reasonable jury could infer that an adequate warning would have altered the urgency and course of decision-making. Abbott's argument improperly collapses the warning inquiry into a generalized knowledge test, under which manufacturers could avoid liability whenever a risk appears in the medical literature. But the proper question is not whether clinicians generally knew of NEC, or even if they generally understood the risk, but whether a jury could reasonably conclude that in this instance an adequate warning from Abbott—

communicating the severity of the risk associated with its specific

product—could have altered decision-making. That question is

quintessentially one for the jury.

Abbott's inevitability argument fails for the same reason. Abbott

asserts that formula feeding was the only available option and therefore

that warnings were irrelevant. *See*, Appellee Br. 24–35. That argument rests

on the false premise that parents could not meaningfully influence feeding

decisions once clinicians recommended formula—an assumption neither

compelled by the record nor appropriate at summary judgment. That

assertion ignores record evidence that alternative human-milk sources

were available but not pursued. Ms. Mar testified that she had additional

expressed breast milk that NICU staff instructed her to discard and that, at

the same time, another mother in the NICU offered to donate her own

breast milk to feed RaiLee—an offer the hospital declined. R.52-30, E. Mar

Dep. 39:10–42:25. Courts entrust juries with warning-causation questions

precisely because they are capable of applying common sense and ordinary

experience to how people respond to serious risk information.

It is not a speculative leap to infer that a parent informed that a product poses a grave and potentially fatal danger to her child would press more urgently for alternatives, question recommendations that carry that risk, and pursue available avenues to reduce exposure—and that such efforts could meaningfully influence the course of care. In real-world settings, parental advocacy can affect how quickly alternatives are pursued, how risks are weighed, and how decisional urgency is calibrated. Whether those efforts would have altered the timing, sequencing, or nature of feeding decisions is a question of reasonable inference and practical judgment, not one that can be resolved as a matter of law at summary judgment.

The very purpose of warnings is to influence future conduct, including the pursuit, timing, and prioritization of alternatives. Where the asserted lack of alternatives is itself a product of inadequate warning, a manufacturer should not be permitted to rely on the lack of alternatives to defeat causation as a matter of law. Accepting Abbott's circular logic

would eviscerate the duty to warn by allowing manufacturers to transform their own silence into a categorical defense to causation.

In short, Abbott's "everybody knows" and inevitability arguments are two sides of the same impermissible coin. Both ask the Court to assume that additional information would not have mattered. But whether information would have mattered is precisely the question warnings are designed to test—and one that juries, not courts, are charged with answering.

## III.    ABBOTT'S ALTERNATIVE AFFIRMANCE/CAUSATION ARGUMENTS ARE IMPROPER

Abbott devotes substantial portions of its response brief to rearguing medical causation, dose, and epidemiology. *See* Appellee Br. 5, 13-14, 45-50. Yet Abbott never clearly identifies which causation ruling it claims was erroneous, nor does it engage the standards of review governing the district court's causation determinations. Instead, Abbott conflates general causation with specific causation and urges this Court to affirm on grounds the district court either rejected or expressly declined to reach. That approach cannot support affirmance.

14

General and specific causation are analytically distinct inquiries. General causation asks whether a product is capable of causing a particular injury in the general population; specific causation asks whether it did so in a particular case. These inquiries involve different evidentiary showings and are governed by different standards of review.

The district court resolved general causation against Abbott after extensive coordinated expert discovery and Daubert proceedings conducted on an MDL-wide basis. In a contemporaneous order, the court denied Abbott's motions to exclude Plaintiffs' general-causation experts and held that Plaintiffs' evidence was sufficient to establish that cow's-milk-based preterm infant formula is capable of causing necrotizing enterocolitis. *See* Master Dkt. 646. Daubert Order at 1–6 (May 2, 2025).

The summary judgment opinion in this case expressly incorporated those rulings. The court observed that portions of Abbott's causation arguments merely reiterated challenges raised—and rejected—in the Daubert proceedings. R.96. Mem. Op. & Order Granting Summ. J. 9–10

(May 2, 2025). The court declined to grant summary judgment on the basis of causation.

It appears that Defendant is indirectly attempting to challenge the district court's decision on general causation. In a lengthy decision, the Court below determined that Dr. Spector and Dr. Sucre were not excluded, having satisfied the *Daubert* standard. R.96. Mem. Op. & Order Granting Summ. J. 9–10 (May 2, 2025).  Although it is unclear whether Abbott is directly challenging that decision, it must be noted that when under review, such decisions are evaluated for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141–43 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 and 152 (1999). Abbott does not contend—much less attempt to demonstrate—that the district court abused its discretion in making its *Daubert* determinations. Instead, Abbott urges affirmance based on disagreement with how the district court evaluated and weighed expert evidence.

Abbott's causation discussion repackages its *Daubert* challenges as arguments for alternative affirmance. That maneuver fails. Where a district

court has exercised its discretion to admit expert testimony and has expressly rejected exclusionary arguments, an appellee cannot obtain affirmance by reinviting the appellate court to reweigh the same evidence under a different label.

To the extent Abbott is seeking to adjudicate specific causation, that is even less appropriate, given that the district court specifically declined to decide specific causation. R.96. Mem. Op. & Order Granting Summ. J. 20. (May 2, 2025). After describing Abbott's argument that none of Plaintiff's experts—including Dr. Dezure—could establish causation, the court explained that it 'need not answer' broader causation questions because summary judgment could be resolved on independent state-law grounds. R.96. Mem. Op. & Order Granting Summ. J. 6. (May 2, 2025). Those grounds were design defect and warning causation. The court granted summary judgment on those bases without determining whether Plaintiff could establish specific medical causation.

Because specific causation was not decided below, it is not ripe to serve as an alternative basis for affirmance. Fact-intensive causation

questions, particularly where expert testimony must be evaluated, weighed, and tested through trial must first be decided at the district court level. They were not.

Abbott's attempt to blur the line between general and specific causation only underscores this point. To the extent Abbott criticizes the district court's causation analysis, it is unclear whether Abbott is attacking the court's general-causation rulings—subject to abuse-of-discretion review—or urging this Court to resolve specific causation de novo. Either approach is improper.

**CONCLUSION**

This appeal presents a narrow Rule 56 question. The district court did not conclude that Plaintiff failed to present evidence; it concluded that warning causation was too uncertain to submit to a jury. That was error. The summary-judgment record contains concrete evidence from which a reasonable jury could infer that an adequate warning—one conveying the magnitude and urgency of the NEC risk associated with Abbott's product—would have mattered.

RaiLee was clinically stable while fed exclusively human milk and developed catastrophic NEC only after Abbott's cow's-milk-based formula was introduced. Her treating neonatologist testified that, had Abbott warned that its product increased the risk of NEC, he would have pursued donor milk sooner and could have accelerated efforts to secure alternatives. RaiLee's mother testified that additional expressed milk was available but discarded, and that another parent contemporaneously offered donor milk that was declined. From this evidence, a reasonable jury could infer that a risk-specific warning would have altered the urgency, sequencing, or course of feeding decisions, even if formula was later used.

Abbott asks this Court to affirm by resolving those inferences against Plaintiff and treating uncertainty as legal insufficiency. Rule 56 does not permit that result. Because a reasonable jury could find that an adequate warning would have influenced decision-making, the judgment below should be reversed.

By:   Jose Rojas
      Levin, Rojas Camassar & Reck
      40 Russ Street
      Hartford, Connecticut 06106
      (860) 535-4040
      jose@lrcr.law

      *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 3,155 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Palatino Linotype style font.

Dated: February 10, 2026

/s/ Jose Rojas
Jose Rojas
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, the Reply Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_/s/ Jose Rojas_

Jose Rojas
Attorney for Plaintiff-Appellant